UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
AT MILWAUKEE

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2022 AUG -1 P 12: 44

CLERK OF COURT

ESTATE OF TERRY WILLIAMS,
By Special Administrator CUC HUYNH,
509 W. Keefe, Milwaukee 53206
L.W., DAUGHTER OF TERRY WILLIAMS,
By LAQESHA GREEN
4015 18th Street, Milwaukee, WI 53209, and
CUC HUYNH,

                Plaintiffs,

v.

MICHAEL TRUAX, Deputy for the Milwaukee
Sheriff's Department, and JOHN DOE #1, and other
unnamed members of the Milwaukee County Sheriff's Dept.,

                Defendants.

_____/

Case No. 2:18-CV-1222

Judge Pamela Pepper

## RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [1]

NOW COMES the Plaintiff, *pro se*, and for her Response to the pending *Motion for Summary Judgment*, state as follows:

### RELEVANT HISTORY

This particular Defendant now seeks Summary Judgment, having faced a long history of delay from attorneys that this Court and others in this court house are well aware of being masters at delay and utter disregard for attorney ethics. Judge Ludwig berated Paul Strouse and

---

[1] Docket Entry #64

Page **1** of **15**

his cast of players as "cookie cutter" serial filers and lacking in regard for Local Rules. [2]

Further, Magistrate Judge Nancy Joseph officially sanctioned these same lawyers, Stern, Strouse and Thomas Napierala for failing in their duties. (see below)

Case No. 19-CV-908
United States District Court, E.D. Wisconsin
Filed June 09, 2021

Joseph, Nancy, United States Magistrate Judge

# ORDER ON MOTION FOR SANCTIONS

InSinkErator, a Division of Emerson Electric Co. ("ISE"), moves for sanctions against Moten in the form of dismissing Moten's complaint in its entirety with prejudice and/or an award of attorneys' fees and costs incurred as a result of Moten's alleged discovery abuses and failure to comply with Court orders. (Docket # 53.) I have granted summary judgment in favor of ISE and dismissed all of Moten's claims on the merits; thus, to the extent ISE requests dismissal as a sanction, the motion is now moot. However, ISE also requests that Moten be ordered to reimburse ISE for its costs and attorneys' fees. For the reasons below, I will grant ISE's motion for sanctions as to attorneys' fees and costs.

BACKGROUND

Moten, through Attorney Walter W. Stern, III, sued ISE on June 20, 2019, alleging discrimination and retaliation based on race. (Docket # 1.) Not three months into the litigation, on September 12, 2019, ISE moved for sanctions on the grounds that Attorney Stern attached an unsealed Settlement Agreement to Moten's Complaint, in direct violation of the Agreement's own terms to keep the document confidential. (Docket # 12.) I granted ISE's motion on November 13, 2019 and awarded ISE $2,256.00 in attorneys' fees and costs. (Docket # 21.) I ordered ISE to submit a certification of

---

[2] The cases, filed by Paul Strouse and Thomas Napierala, are Herron v. Credit One Bank, et al., case #20-cv-0844 (E.D. WI) and Butler vs. 1st Franklin Financial Corporation, et al., Case #20-cv-0842 (E.D. WI). In each case, the consumer filed suit against Enhanced Recovery Company, LLC (ERC) and other defendants alleging all defendants failed to correct and report accurate credit information.

Judge Ludwig specifically cited the numerous examples of sloppy legal work by the consumers' counsel. He characterized the response to the order to show cause as "plagued with errors." He provided specific examples, including that the response cited a "'goof' faith belief" and "duplicitous" complaints (instead of "duplicative"). Again, making his opinion of Mr. Strouse and Mr. Naperiela's legal work quite clear, in addition to providing a laundry list of errors in a footnote, Judge Ludwig offered the following critique:

"[The] sloppiness and general disregard for the Local Rules fails to meet even the most basic expectations for federal court practitioners. While anyone can make a mistake in the hectic practice of law, the Court expects greater care than this, particularly in responding to an order to show cause. And, unfortunately, these blunders are simply a continuation of similar mistakes that have plagued this entire series of cases."

Finally, Judge Ludwig noted that the consumers' counsel failed to respond to his direct inquiry regarding whether the case was filed for an improper purpose and failed to come forward with any facts that would even suggest a proper purpose; therefore, sanctions were warranted. In deciding the amount of sanctions to award to each defendant, he noted that although he had the power to award all of the defendants all of their attorneys' fees, he would show Mr. Strouse and Mr. Napierala "mercy" by only requiring them to pay $2,000.00 to each remaining defendant for a total of $6,000.00.

costs and fees related to filing the sanctions motion, and ultimately granted an additional $1,500.00 in sanctions on January 16, 2020. (Docket # 25.) Attorney Stern has paid this sanction award to ISE. (Docket # 54 at 4 n.3.)

Very shortly thereafter, on January 27, 2020, ISE filed an expedited motion to compel Moten's discovery response, arguing that Moten failed to file full and complete responses to ISE's discovery requests and initial disclosures. (Docket # 26.) While this motion was pending, on February 10, 2020, Attorneys Paul Strouse and Thomas Napierala entered notices of appearance. (Docket # 29.) Attorney Stern was withdrawn as counsel of record. A hearing was held on ISE's expedited motion on February 12, 2020. (Docket # 31.) Both Attorneys Strouse and Napierala appeared at the hearing. (Id.) Moten was ordered to turn over all outstanding discovery by March 12, 2020 and the parties were ordered to confer regarding an award of costs due ISE for Moten's discovery delays. (Id.) The parties could not stipulate to an amount for attorneys' fees, so on April 16, 2020, I awarded ISE $4,000.00 for fees and costs associated with obtaining discovery. (Docket # 36.)

On May 5, 2020, ISE informed the Court that Moten failed to comply with the Court's February 12, 2020 Order compelling discovery and indicated that Moten's counsel had failed to pay the $4,000.00 sanction award. (Docket # 37.) Attorney Napierala responded, denying a lack of compliance with the discovery requests and asserting that as Attorneys Napierala and Strouse entered appearances only two days prior to the sanctions hearing, they should not be responsible for the sanctions award. (Docket # 39.) I held a hearing on May 15, 2020 on the continued discovery disputes and sanctions award. (Docket # 40.) Moten was ordered to either pay counsel the sanctions award by May 29, 2020 or update the Court on the status. (Id.) On June 4, 2020, the Court received a letter from Attorney Napierala stating that Attorney Stern had been updated regarding the sanctions issue and Attorney Stern was attempting to resolve the issue. (Docket # 41.) However, on June 15, 2020, ISE informed the Court that the April 16, 2020 sanctions award remained unpaid. (Docket # 45.)

Also on June 15, 2020, the parties filed a joint motion to extend the discovery deadlines. (Docket # 43.) ISE stated that it served its first set of written discovery on October 1, 2019, with responses due October 31, 2019. (Id. ¶ 2.) The discovery requests included medical record disclosure authorizations for any providers Moten treated with regarding his damages claims. (Id.) Moten responded with the name of one treating provider. (Id. ¶ 3.) The records from this provider contained the names of three additional providers Moten treated with related to his claim. (Id.) ISE then obtained additional medical authorizations for these providers. (Id.) Moten was deposed on June 9, 2020 and during his deposition, ISE learned of an additional medical provider he treated with regarding his alleged damages. (Id. ¶ 4.) As such, ISE requested an additional 60 days to obtain the records from this treating provider and to determine whether he needed to be deposed or whether Moten needed to be questioned further. (Id. ¶ 6.) The parties' motion was granted and a dispositive motion deadline of October 29, 2020 was given. Once again, ISE learned of two additional, previously undisclosed, healthcare providers Moten treated with after obtaining these additional medical records. (Docket # 54 at 7.)

On September 11, 2020, ISE moved for summary judgment on the merits of Moten's discrimination and retaliation claims. (Docket # 47.) ISE simultaneously filed the instant motion for sanctions. (Docket # 53.) In its sanctions motion, ISE asks, in the event that its summary judgment motion is denied on the merits, for dismissal of Moten's complaint with prejudice as a sanction for Moten's pattern of discovery misconduct. (Docket # 54 at 2 n.1.) Additionally, ISE requests its attorneys' fees and costs. Pursuant to Civil L. R. 56(b)(2) (E.D. Wis.), a party opposing a motion for summary judgment must file within 30 days of service of the motion a memorandum of law and a response to the moving party's proposed findings of fact. Moten failed to respond to either the summary judgment or the sanctions motion. ISE, however, filed a reply brief on October 15, 2020—the date

Moten's summary judgment response was due. (Docket # 56.) ISE informed the Court that plaintiff's counsel still had not paid the $4,000.00 in sanctions awarded to ISE. (Id.)

For the next six months, the docket remained silent. However, on April 15, 2021, Attorney Napierala moved to withdraw as counsel from the case, stating that he and Attorney Strouse had "different philosophy [sic] concerning this matter" and that "it would be best for all parties if Attorney Strouse proceeded on this matter as sole counsel." (Docket # 57.) No mention was made of the pending summary judgment or sanction motion. However, given Attorney Napierala's representations to the Court that Attorney Strouse continued on as counsel for this case, his motion was granted. Again, the docket fell silent until June 4, 2021, when Attorney Strouse also moved to withdraw as counsel, stating that he developed "irreconcilable differences" with Moten regarding how the case was to be litigated. (Docket # 58.) He stated that he was always the "second chair" in the litigation, that Attorney Napierala handled the majority of the work in the case, and that Attorney Napierala withdrew from the case without informing Attorney Strouse, leaving Attorney Strouse "to hold the 'proverbial bag.' " (Id.)

ANALYSIS

Multiple avenues exist in which a Court can impose sanctions to penalize and discourage misconduct in litigation. ISE moves for sanctions under Fed. R. Civ. P. 37(b), which allows for the award of reasonable expenses, including attorneys' fees, caused by the failure to comply with a discovery order. In addition, however, to having the authority to sanction by statute or rule, a court has the inherent authority to fashion an appropriate sanction for conduct which abuses the judicial process, including the imposition of attorneys' fees. Chambers v. NASCO, Inc., 501 U.S. 32, 44–46 (1991) ("We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above."). The Chambers Court warned, however, that because of its potency, a court must exercise its inherent powers with restraint and discretion. Id. at 44. "Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." Ramirez v. T & H Lemont, Inc., 845 F.3d 772, 776 (7th Cir. 2016). "Mere clumsy lawyering is not enough" to justify a finding of abuse of process or bad faith. Fuery v. City of Chicago, 900 F.3d 450, 464 (7th Cir. 2018). "The sanction imposed should be proportionate to the gravity of the offense." Montano v. City of Chi., 535 F.3d 558, 563 (7th Cir. 2008) (citing Allen v. Chi. Transit Auth., 317 F.3d 696, 703 (7th Cir. 2003)).

I am mindful that sanctions should not be lightly granted. However, all three of Moten's attorneys in this case exhibited a pattern of bad faith and vexatious behavior from the case's inception. Not four months into this case, Attorney Stern was sanctioned for docketing a confidential document. Also early on, Moten was asked to provide a list of any providers he treated with regarding his damages claim. Moten responded with one name. Only after eight months of multiple previously undisclosed medical providers surfacing did ISE learn the names of (presumably) all of Moten's relevant treating providers. Moten was sanctioned for a second time due to his discovery misconduct and despite a court order in place compelling him to turn over all remaining outstanding discovery by March 12, 2020, Moten continued to fail to comply with ISE's discovery requests and pay the $4,000.00 sanction award. When ordered to provide a status as to payment of the sanction award to ISE by May 29, 2020, Attorney Napierala failed to respond until June 4 and even then, shifted responsibility to Attorney Stern. The award still has not been paid. Moten never responded to ISE's summary judgment or sanction motions, and both Attorneys Napierala and Strouse, rather than explaining their actions, moved to withdraw as counsel.

It is clear that Moten has received poor representation from all three attorneys since the beginning of this litigation. Plaintiff's counsel have delayed or otherwise impeded discovery, violated court orders, and ultimately ignored ISE's motion for summary judgment and for sanctions. Devoid of explanation, counsel attempt to shift blame—Attorneys Napierala and Strouse cannot comply with the

> Court's sanctions order because it was Attorney Stern's fault; Attorney Strouse was never that involved in the case, so all fault lies with Attorney Napierala. With three attorneys all pointing the finger at each other and ultimately jumping ship on the case, no one is left to claim responsibility. Unfortunately, in the end, the only person "left to hold the proverbial bag" is Moten. Again, Attorney Strouse now seeks to withdraw as counsel, stating that he has developed "irreconcilable differences" with Moten as to how to litigate the case. (Docket # 58.) As Attorney Strouse's strategy appears to be ignoring the pending motions, it is understandable why there is a difference of opinion. Attorney Strouse's motion to withdraw as counsel is denied.
>
> On this record, ISE's motion for sanctions is justified and will be granted. Unfortunately, only Attorney Strouse is left as counsel of record in this case. As to the instant sanctions motion, ISE seeks its attorneys' fees incurred as a result of this sanctions motion and in its effort to continue pursuing treating healthcare providers since the Court's previous order for sanctions. (Docket # 53.) Although both Attorneys Napierala and Strouse have acted in bad faith, as only Attorney Strouse remains as counsel of record, I will order Attorney Strouse to pay the sanctions. Counsel for ISE shall submit an affidavit or other certification detailing the reasonable costs and fees relating to and associated with filing the instant sanctions motion, as well as for its efforts to continue pursuing treating healthcare providers since the Court's previous order for sanctions, by June 25, 2021. Attorney Strouse will have until July 9, 2021 to respond.

The Plaintiff mentions these "attorneys", noting that Strouse has since left the practice of law completely, due to the prior "Motion to Dismiss" and the languishing history and lethargic filings by these struggling Plaintiffs. Without question, the Plaintiffs' "attorneys" have lacked a degree of professional qualities commensurate with federal practitioners.

DEFENDANT'S RECITATION OF CASE

This lawsuit was filed more than three years ago, on August 8, 2018. (DPFF ¶ 1.)1 Plaintiffs, the Estate of Terry Williams by Special Administrator Cuc Huynh, Ms. Huynh in her individual capacity, and L.W., a minor, amended their Complaint on December 20, 2018. (DPFF ¶ 2.) The allegations in this case generally relate to Milwaukee County Sheriff's Deputy Michael Truax's use of deadly force against
1 All undisputed, material facts necessary to support Defendant's Motion for Summary Judgment are contained in his Proposed Findings of Fact filed concurrently with this Brief. Defendant cites to those facts in summary and as relevant to his arguments below by referring to "DPFF." 2 Terry Williams on June 11, 2017. (DPFF ¶ 3.) Cuc Huynh is Terry Williams' biological mother. (DPFF ¶ 8.)
On July 22, 2020, the Court issued an Order Dismissing Case as to Plaintiffs Estate of Terry Williams and L.W. and Requiring Plaintiff Huynh to Advise the Court Whether she Wishes to Continue with This Federal Lawsuit. (DPFF ¶ 4.) The Court dismissed Plaintiffs Estate of Terry Williams and L.W. from the case without prejudice, leaving Cuc Huynh as the sole Plaintiff. (DPFF ¶ 5.)

On August 12, 2021, the parties submitted a proposed amended Rule 26(f) plan, which the Court adopted on August 13, 2021. (DPFF ¶ 6.) The Court set the following deadlines in its latest (and current) scheduling order:

- Plaintiff's expert disclosures due by November 15, 2021

- Defendant's expert disclosures due by February 15, 2022

- Discovery cutoff on April 8, 2022

- Dispositive motions due by April 15, 2022

(DPFF ¶ 7.) Plaintiff has not sought to amend her operative complaint at any time since December 20, 2018. (DPFF ¶ 9.)2

For the reasons explained more fully below, Defendant is entitled to judgment as a matter of law. Cuc Huynh, as the sole remaining Plaintiff in this action, has not alleged that she is entitled to any form of relief."

---

By citing the Defendant's position, she in no way adopts or waives any argument or defense to which she may be entitled.

## ARGUMENT

### I. Summary Judgment is Proper Under Fed. R. Civ. P. 56 if There are no Genuine Issues of Material Fact and Defendants are Entitled to Judgment as a Matter of Law.

The burden to convince this Court that the Defendant did not use excessive force in killing Terry Williams as he drove past him near the lakefront. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, establish that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The initial burden is on the moving party to demonstrate, with or without supporting affidavits, the absence of a genuine issue of material fact and that judgment as a matter of law should be granted to the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that is outcome-determinative

of an issue in the case with substantive law identifying which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Defendant in this Motion, has <u>not</u> filed any Affidavits in support of the quest for summary relief, but the standard "cookie cutter" rhetoric and legal theory.

The facts surrounding this case are well publicized. Terry Williams, operating a vehicle being pursued by a MCSO squad, was shot and killed as he drove past this Defendant.



Photo Courtesy of Fox 6 News

The trier of fact, in this case a jury, will need to determine if the Defendant possessed a valid and/or justified purpose or basis for killing Terry Williams as he drove past him.

**II. Deputy Truax is Entitled to Judgment as a Matter of Law.**

The Defendant posits that:

"At the outset, it is not clear from Plaintiff's operative complaint that she has alleged entitlement to any form of relief under state or federal law. (Am. Compl. ¶¶ 27–33, ECF No. 20.) Thus, Plaintiff has failed to state any claims upon which relief could be granted to her. *See United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013) ("Importantly, the Supreme Court's decisions in *Twombly* and *Iqbal* ushered in a requirement that civil pleadings demonstrate some merit or plausibility in complaint allegations to protect defendants from having to undergo costly discovery unless a substantial case is brought against them."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) (holding that a complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief). If allegations in a complaint give rise to an "'obvious alternative [legitimate] explanation'" for the conduct which is allegedly wrongful, the claim fails to meet the plausibility requirement and must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). For this reason alone, Defendant is entitled to judgment as a matter of law."

---

In <u>*Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984),</u> we held that Daniel's status as an adult living on his own at the time he was killed did not preclude recovery, stating, "we are unpersuaded that a constitutional line based solely on the age of the child should be drawn." *Id.* at 1245. We explained that "[t]he Supreme Court's decisions protect more than the custody dimension of the parent-child relationship" and that the protected relationship "includes the parent's 'interest in the companionship, care, custody, and management' of the child." *Id.* (quoting <u>*Stanley,* 405 U.S. at 651, 92 S.Ct. 1208</u>). We also noted that Daniel Bell was single, had no children, and had not become part of another family unit. "[H]is father's family was his immediate family." *Id.* Moreover, we observed, the Wisconsin wrongful death statute permitted recovery for loss of society and companionship regardless of the age of the child at his death. *Id.* (citing Wis. Stat. § 895.04(4)). We therefore concluded that Daniel's age and separate residence were matters for the jury to consider when determining 787*787 damages, but were not a bar to recovery. *Id. Our opinion declined to extend constitutional protection to the relationship between Bell and his siblings, remarking that were we to rule otherwise, "there could be no principled way of limiting such a holding to the immediate family or perhaps even to blood relationships."*

Page **8** of **15**

*Id. at 1247. We noted that Supreme Court decisions examining the Fourteenth Amendment liberty interests were based primarily on the parents' constitutional right to raise, associate with, and make decisions affecting the family, even though they also alluded to the importance of the integrity of the family unit as a whole. Id. at 1245-46.*

*In support of their motion for summary judgment before the district court, defendants argued that Russ's parents lacked standing because Russ had formed a new family unit with Lewis. Based on our statement in Bell that Daniel's "father's family was his immediate family," the district court concluded that the crucial issue in determining whether Russ's parents had standing to recover for the loss of society and companionship of their son was whether Russ had become part of another family unit.*

*To answer this question, the district court relied on the following facts admitted by plaintiffs: (i) at the time of his death, Russ lived on campus at Northwestern; (ii) when Erin Lewis learned she was pregnant with Russ's child, they discussed the pregnancy; and (iii) before his death, Russ was making plans to care for his unborn son. In addition, the district court relied on defendants' allegation that Russ and Lewis had discussed moving in together to raise their son. Although plaintiffs disputed this fact, the district court concluded that they had failed to provide any citations in the record to support their denial.*

*The district court thus concluded: "It is clear from the facts and the totality of the circumstances before us that Russ was no longer living at home at the time of his death and that he had formed a new family unit." Russ v. Watts, 2004 WL 1459262, at *4 (N.D.Ill. June 18, 2004). Based on this conclusion, the district court held that "Russ' parents have not shown that they have standing to proceed in this suit" and granted summary judgment in favor of all remaining defendants. Id*

Although the *Bell* decision was later reversed, [3] the Court recognized an emotional bond can exist between an adult child who resides at home and a surviving parent. In this case, Terry Williams resided with the Plaintiff at the time of his being killed.

The Defendant also contends that "no other claim" exists in the Complaint, which is also misguided, in that the *Relief Requested* reads as follows:

> WHEREFORE, Plaintiffs demand judgment as follows:
> a.     In favor of the PLAINTIFFS and against the DEFENDANT MICHAEL TRUAX or JOHN DOE #1 and other unnamed Milwaukee County Sheriff's Department Deputies, for compensatory damages, pain and suffering, loss of life, loss of companionship and society, and pecuniary losses to TERRY WILLIAMS' Estate; and
>
> b.     b. In favor of the PLAINTIFFS for punitive damages; and …

---

The plain meaning for "Pecuniary Damages" reads:

> "As it relates to a wrongful death lawsuit, a pecuniary loss is defined as **the financial loss you may experience as a family member of a person who has died due to someone else's negligence**. This can include the loss of emotional support, loss of financial support, and travel, medical, and funeral expenses."

---

In that Terry Williams will forever be lost to the Plaintiff, who resided in her home, provided emotional and financial support to the home, along with the costs incurred for funeral expenses and costs associated with his death by the Plaintiff, those costs and losses are recoverable. (see attached and incorporated Declaration)

The Defendant wishes to point out that WILEAG, *Wisconsin Law Enforcement Accreditation Group*, which sets the Policy for all Wisconsin law enforcement agencies, has established boilerplate policy for situations which cover the underlying circumstances. It states as follows:

---

[3] **RUSS v. WATTS, 414 F.3d 783 (2005)**

## 460.15 AMOUNT OF FORCE (WILEAG 5.1.2, 5.1.3)

A. **Force that is intended or likely to cause great bodily harm or death, may only be used:**

1. If reasonable under all the circumstances then existing to prevent great bodily harm or death to the officer or a third party;

2. When necessary to prevent a suspect's escape and the officer has probable cause to believe that the suspect presently poses a significant threat of great bodily harm or death to the officer or others;   (WILEAG 5.1.2.1)

## 460.30 RESTRICTIONS ON DISCHARGING FIREARMS

A. Discharging a firearm at or from a moving vehicle shall only be done in the following circumstances and only when all other reasonable alternatives have been exhausted or deemed unacceptable.

1. A police member shall not discharge a firearm at the driver or occupant(s) of a moving vehicle, or the vehicle itself, unless deadly physical force is being used against the police member or another person by means other than a moving vehicle, or, the moving vehicle poses an imminent and ongoing threat of substantial physical harm to the police member or another person from which there is no reasonable means to escape, and the risks are outweighed by the need to use deadly physical force. Once the threat of the moving vehicle ceases, a police member shall not discharge his or her firearm at the vehicle.

2. Police members shall not intentionally place themselves to either the front or the rear of a moving vehicle's path. If they find themselves in danger from a moving vehicle, they shall attempt to move out of the way, if possible, rather than discharge their firearm. Firing at a moving vehicle will not, in most circumstances, stop the vehicle. Further, should the driver be wounded or killed, the vehicle may still continue in motion.

3. A police member shall not discharge a firearm from a moving vehicle unless deadly physical force is being used against the police member or another person by means other than a moving vehicle (e.g., fired upon), and the risks are outweighed by the need to use deadly force.

4. Police members shall not reach into or place any part of their bodies inside a driver occupied vehicle during a traffic stop or field interview.

---

The Defendant intentionally disregarded the safety of others and the people accompanying Terry Williams that fateful day and executed him as he drove past him.

## CONCLUSION

For the reasons set forth herein, the Plaintiff is entitled to her day in court. She has a meritorious claim for damages as set forth in the Complaint and the Defendant acted without lawful authority in killing her son in a clear a demonstrative exhibition of excessive force.

Dated this 29th day of July, 2022.

By: *[signature]*

CUC HUYNH, Plaintiff

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
AT MILWAUKEE

ESTATE OF TERRY WILLIAMS,
By Special Administrator CUC HUYNH,
509 W. Keefe, Milwaukee 53206
L.W., DAUGHTER OF TERRY WILLIAMS,
By LAQESHA GREEN
4015 18th Street, Milwaukee, WI 53209, and
CUC HUYNH,

                Plaintiffs,                Case No. 2:18-CV-1222

v.

                                            Judge Pamela Pepper

MICHAEL TRUAX, Deputy for the Milwaukee
Sheriff's Department, and JOHN DOE #1, and other
unnamed members of the Milwaukee County Sheriff's Dept.,
                Defendants.
_____/

## DECLARATION OF CUC HAUNH

Now comes CUC HUYNH, under penalty of perjury and declares the following:

1. That she is the Plaintiff in the above cause of action and the biological mother of the deceased, Terry Williams.

2. That for all times relevant in the Complaint, Terry Williams resided with her full time.

3. That Terry Williams contributed $1,000.00 or more per month towards household expenses while living with Plaintiff.

4. That Terry Williams bought clothes and such for family members while residing at Plaintiff's home.

5. That Terry Williams purchased food for family members while residing in Plaintiff's home.

Page **13 of 15**

Case 2:18-cv-01222-PP   Filed 08/01/22   Page 13 of 15   Document 75

6. That the day Terry Williams was killed, he was driving a vehicle owned and registered to the Plaintiff, at Plaintiff's home address and was subsequently totally destroyed by the Defendant during the shooting for a total loss.

7. That Plaintiff suffered and continues to suffer the emotional loss of her son, Terry Williams and has visited clinicians as a proximate result of the death of her son.

8. That Plaintiff incurred the funeral and burial expenses as a result of the Defendant's acts and omissions as set for in the Complaint.

9. That Plaintiff relied on the attorneys, Stern, Strouse and Napieralla to adhere to all of the Court's Orders and directives, as she speaks very little English, but Hmong and found their actions contrary to the promises and inducements made to her when contracted.

10. That the Plaintiff has and will continue to act in good faith, even during the *pro se* time while she seeks replacement counsel in preparation for future proceedings.

Further Declarant Sayeth Not.

Dated this 29th day of July, 2022.

By: *Cuc D Huynh*
CUC HUYNH, Plaintiff

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
AT MILWAUKEE

ESTATE OF TERRY WILLIAMS,
By Special Administrator CUC HUYNH,
509 W. Keefe, Milwaukee 53206
L.W., DAUGHTER OF TERRY WILLIAMS,
By LAQESHA GREEN
4015 18th Street, Milwaukee, WI 53209, and
CUC HUYNH,

                Plaintiffs,                Case No. 2:18-CV-1222

v.

                                       Judge Pamela Pepper

MICHAEL TRUAX, Deputy for the Milwaukee
Sheriff's Department, and JOHN DOE #1, and other
unnamed members of the Milwaukee County Sheriff's Dept.,
                Defendants.
_____/

## CERTIFICATE OF SERVICE

I, CUC HUYNH, hereby certify that I served the annexed Response and Affidavit upon the Defendant, by placing same in the United States mail, with postage fully prepaid, on July 29th, 2022, addressed to:

    CRIVELLO CARLSON, S.C.
    SAMUEL C. HALL, JR. (SBN: 1045476)
    BENJAMIN A. SPARKS (SBN: 1092405)
    710 N. Plankinton Avenue #500
    Milwaukee, WI 53203

Dated this 29th day of July, 2022.

                                                    By: _____
                                                            CUC HUYNH, Plaintiff