UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CUC HUYNH,

    Plaintiff,

              Case No. 18-cv-1222-pp

  v.

MICHAEL TRUAX,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 64) AND DISMISSING CASE WITH PREJUDICE

This case has been pending since August of 2018. In April 2022, the defendant filed a motion for summary judgment. Dkt. No. 64. At the time the defendant filed the motion, Attorney Paul Strouse represented the plaintiff. Two months after the defendant filed the motion, the court conducted a hearing and orally denied the plaintiff's motion for extension of time to disclose experts (Dkt. No. 55), denied without prejudice defendant's motion to dismiss (Dkt. No. 56) and granted Strouse's motion to withdraw as counsel (Dkt. Nos. 61, 63). Dkt. No. 71. The court gave the plaintiff an opportunity to find successor counsel; it ordered that, by the end of the day on July 29, 2022, either an attorney must file a notice of appearance on behalf of the plaintiff or the plaintiff must file a response to the summary judgment motion. Id. The court ordered that if neither of those things occurred by day's end on July 29, 2022,

1

the court would rule on the summary judgment motion without the plaintiff's input. Id.

The court also entered a written order discussing the history of this litigation, the delays and missteps by the plaintiff's attorneys, the plaintiff's failure to respond to the summary judgment motion, the hurdles the plaintiff faced in bringing a §1983 claim based on the deprivation of a decedent's constitutional rights and the need to respond to summary judgment. Dkt. No. 70. Prior to the July 29, 2022 deadline, the plaintiff filed another motion for extension of time, dkt. no. 72, which the court denied on August 1, 2022, dkt. no. 74. The court warned the plaintiff that she must file her response in time for the court to receive it by the end of the day on August 15, 2022. Id. The court received the plaintiff's brief—dated, July 29, 2022—on August 1, 2022. Dkt. No. 75. The defendant has filed his reply. Dkt. No. 76.

Because the plaintiff cannot bring a derivative claim under §1983 based on constitutional violations allegedly experienced by her son, the court will grant the defendant's motion for summary judgment and dismiss the case with prejudice.

## I.    Summary Judgment Standard

A party is entitled to summary judgment if she shows that there is no genuine dispute as to any material fact and she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material

2

fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986

## II.    Findings of Fact

The defendant's proposed findings of fact cite exclusively to pleadings and orders available on the court's docket. Dkt. No. 66. In her opposition brief, the plaintiff included a recitation of the defendant's proposed findings of fact (Dkt. No. 75 at 5-6), but did not respond to those proposed findings, as required by this court's civil local rules. Civil Local Rule 56(b)(2)(i) (E.D. Wis.). The plaintiff wrote in the brief that "[b]y citing the Defendant's position, [the plaintiff] in no way adopts or waives any argument or defense to which she may be entitled." Dkt. No. 75 at 6. Because each of the defendant's findings are properly supported (by the plaintiffs' own pleadings and the court's orders available on the public docket), the court finds that they are undisputed for purposes of summary judgment. Civil L.R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment").

The plaintiff is the biological mother of Terry Williams; she filed the initial complaint in this court on August 8, 2018. Dkt. No. 1 at ¶5. The initial complaint named three plaintiffs: the Estate of Terry Williams by Special Administrator Cuc Huynh, L.W. (Williams's minor daughter) and Cuc Huynh in

3

her individual capacity. Dkt. No. 1 at 1. The plaintiffs were represented by Attorney Walter Stern. Id. at 17.

The amended complaint, filed on December 20, 2018 by Attorney Stern, named the same three plaintiffs. Dkt. No. 20 at 1. It alleged that on June 11, 2017, Milwaukee County sheriff's deputy Michael Truax used deadly force against Terry Williams. Id. at ¶¶6-26. The defendant answered the amended complaint, dkt. no. 21, and the parties filed a joint Rule 26(f) plan, dkt. no. 23. In March 2019, the court issued a scheduling order. Dkt. No. 24. Seven months later, however—after the close of fact discovery but before the deadline had expired for the plaintiffs to disclose their expert witnesses—Attorney Stern filed a motion to withdraw. Dkt. No. 29. After an April 8, 2020 hearing, the court granted that motion. Dkt. No. 32. The court explained that two of the three plaintiffs were an estate and a minor, both of which had to be represented by a lawyer under Wisconsin and federal law; it explained that the estate and the minor could not be represented by the plaintiff, a non-lawyer. Id. at 1. The plaintiff indicated that she was trying to find a lawyer. Id. The court gave the plaintiffs a deadline of July 21, 2020 by which to find new counsel. Id. at 2.

By July 21, 2020, no attorney had filed a notice of appearance; on July 22, 2020, the court issued an order dismissing without prejudice the estate and the minor plaintiffs for the reasons it had explained at the April hearing. Dkt. No. 33 at 2. The court ordered that by the end of the day on August 14, 2020, the plaintiff must indicate, in writing, whether she intended to proceed

4

with the litigation. Id. at 5. On August 4, 2020, the court received from the plaintiff a letter stating that she wanted to continue the case. Dkt. No. 34. The court held another hearing, during which the plaintiff indicated that she had retained Attorney Paul Strouse but that he was unable to attend the hearing. Dkt. No. 37 at 1. The court ordered that a lawyer must file a notice of appearance by August 28, 2020. Id.

Attorney Strouse filed a notice of appearance on August 27, 2020. Dkt. No. 38. Only eight months later, after filing a request for an extension of time and an agreement to amend the scheduling order, Attorney Strouse moved to withdraw. Dkt. No. 44. The court eventually granted that motion. Dkt. No. 52.

On August 12, 2021, the parties filed a Rule 26(f) plan, dkt. no. 53, which the court adopted on August 13, 2021, dkt. no. 54. The court required the plaintiff to disclose the identities of her experts and any reports by November 15, 2021, the defendant to disclose the identities of his experts and any reports by February 15, 2022 and the parties to file dispositive motions by April 15, 2022. Dkt. No. 54. The defendant filed his motion for summary judgment on April 14, 2022. Dkt. No. 64.

Since filing the amended complaint (through Attorney Stern) on December 20, 2018, the plaintiff has not sought to further amend the complaint.

### III. Parties' Arguments

The defendant first asserts that the amended complaint does not allege that the plaintiff is entitled to relief or state any claims upon which relief could

be granted to her. Dkt. No. 65 at 4. Next, the defendant argues even if the amended complaint arguably asserts that the plaintiff is entitled to relief under 42 U.S.C. §1983, the claims in the complaint fail as a matter of law. Id. at 5. The defendant asserts that Fourth Amendment rights are personal rights that cannot be vicariously asserted. Id. at 5 (citing Alderman v. United States, 394 U.S. 165, 174 (1969)). The defendant contends that in Russ v. Watts, 414 F.3d 783 (7th Cir. 2005), the Seventh Circuit held that "surviving parents had no independent constitutional right to recover for loss of society and companionship of an adult child incidental to state action." Id. (citing Jenkins v. Bartlett, 487 F.3d 482, 484 n.1 (7th Cir. 2007)). The defendant argues that the only party that could maintain the claims alleged in the amended complaint—wrongful pursuit and excessive force under the Fourth Amendment—was the Estate of Terry Williams. Id. The defendant notes that the estate is no longer a party,  and argues that the Seventh Circuit's holding in Russ bars the claims of Terry Williams's mother—the plaintiff. Id.

The plaintiff filed a fourteen-page opposition brief. Dkt. No. 75. The first four pages of the opposition brief cite to other cases in which Judge Brett H. Ludwig comments in a different case, in which he described the firm that employed Attorney Strouse as "cookie cutter serial filers," id. at 1-2 n.2, and to a case in which Magistrate Judge Nancy Joseph sanctioned Strouse, id. at 2-5. The plaintiff says that she mentions her former attorneys because of the "languishing history and lethargic filings by these struggling plaintiffs." Id. at 5. She then restates the defendant's proposed findings of fact, but maintains that

6

"she in no way adopts or waives any argument or defense to which she may be entitled." Id. at 6.

The plaintiff says, "[t]he burden to convince this Court that the Defendant did not use excessive force in killing Terry Williams as he drove past him near the lakefront;" she later says that the "initial burden" at summary judgment "is on the moving party . . . ." Id. The plaintiff asserts that the defendant did not file any affidavits and accuses the defendant of "'cookie cutter' rhetoric and legal theory." Id. at 7. The plaintiff says that the case was well publicized, that Williams was operating a car being pursued by "a MCSO squad" and was shot and killed as he drove by the defendant and that a trier of fact, "in this case a jury," must decide whether the defendant had a valid or justified purpose for killing Terry Williams. Id.

The plaintiff quotes extensively from Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984). Id. at 8-9. She also quotes extensively from Russ v. Watts, 414 F.3d 783 (7th Cir. 2005), arguing that the Seventh Circuit has "recognized an emotional bond can exist between an adult child who resides at home and a surviving parent." Id. at 9-10 n.3. She says that her son was living with her at the time of his death. Id. at 10.

As for the defendant's assertion that she has not asserted a claim, the plaintiff points to the relief she requested in the amended complaint:

WHERFORE, Plaintiffs demand judgement as follows:

a. In favor of the PLAINTIFFS and against the DEFENDANT MICHAEL TRUAX or JOHN DOE #1 and other unnamed Milwaukee County Sheriff's Department Deputies, for compensatory damages,

pain and suffering, loss of life, loss of companionship and society,
and pecuniary losses to TERRY WILLIAMS' Estate and

b.    In favor of the PLAINTIFFS for punitive damages; . . .

Id. at 10.[1]

The plaintiff explains asserts, without citation, that "[t]he plain meaning for 'Pecuniary Damages' reads: . . . **'the financial loss you may experience as a family member of a person who has died due to someone else's negligence**.'" Id. She contends that Terry Williams "will forever be lost to the Plaintiff, who resided in her home, provided emotional and financial support to the home, along with the costs incurred for funeral expenses and costs associated with his death by the Plaintiff, those costs and losses are recoverable." Id. The plaintiff says that the Wisconsin Law Enforcement Accreditation Group sets policy for all Wisconsin law enforcement agencies and asserts that this organization has "established boilerplate policy for situations which cover the underlying circumstances." Id. She quotes two policies, one addressing "amount of force" and one addressing "restrictions on discharging firearms." Id. at 11.

The plaintiff asserts that the defendant "intentionally disregarded the safety of others and the people accompanying Terry Williams that fateful day and executed him as he drove past him." Id. The plaintiff says she is entitled to her day in court, arguing that she has a claim for damages "and the Defendant

---

[1] This language comes from page 8 of the amended complaint, Dkt. No. 20.

acted without lawful authority in killing her son in a clear demonstrative exhibition of excessive force." Id. at 12.

The plaintiff included in the brief her own declaration, explaining that she is Terry Williams's biological mother, that he resided with her full time and that he contributed $1,000 or more per month to her household expenses while he lived with her. Id. at 13, ¶¶1-3. She avers that Williams purchased clothes "and such" and food for family members. Id. at ¶¶4-5. The plaintiff avers that Terry Williams was driving the plaintiff's car at the time he was killed, id. at 14, ¶6, and that the plaintiff has had to see several doctors because of her suffering, id. at ¶7. She avers that she incurred funeral and burial expenses. Id. at ¶8. The plaintiff says she relied on her attorneys, because she "speaks very little English, but Hmong and found their actions contrary to the promises and inducements made to her when contracted." Id. at ¶9.

The defendant replies that Russ v. Watts, 414 F.3d 783 (7th Cir. 2005) is the law of this circuit. Dkt. No. 76 at 1. He asserts that in Russ, the Seventh Circuit held that surviving parents have "no constitutional right to cover for loss of society and companionship of an adult incidental to state action." Id. (citing Jenkins v. Bartlett, 487 F. 3d 482, 484 n. 1 (7th Cir. 2007)). The defendant argues that the complaint contains no allegations that the defendant used deadly force to interfere with the plaintiff's family relationship with Terry Williams and that it is not clear from the amended complaint whether the plaintiff "has attempted to bring a claim under Section 1983 at all." Id. at 2.The defendant argues that the remainder of the plaintiff's response is not material

9

for purposes of the defendant's motion. Id. The defendant says that the comments about the plaintiff's former counsel, the alleged shooting and photo from the media either are not material to the defendant's motion or are not supported by admissible evidence. Id. The defendant concludes that the plaintiff cannot recover under §1983 absent a showing that the state directly interfered with her family relationship and that she did not allege that in the operative complaint. Id. at 3.

**IV.    Analysis**

The December 20, 2018 amended complaint—which named the plaintiff, the estate and Williams's minor daughter—alleged the following under the heading "Cause of Action":

- That Terry Williams was "unconstitutionally pursued for a traffic violation that never occurred and that pursuit was in clear violation of the 4th and 14th Amendments to the United States Constitution." Dkt. No. 20 at ¶28.

- That Terry Williams, "prior to his death, experienced pain and suffering, pecuniary loss to his Estate, and other compensatory damages, intentionally and/or recklessly caused by Defendant." Id. at ¶29.

- "That the daughter of TERRY WILLIAMS, L.W., experienced a loss of companionship and society due to the 'wrongful death' of Plaintiff TERRY WILLIAMS." Id. at ¶30.

- "That the death of TERRY WILLIAMS was in violation of the rules and regulations of the Milwaukee Sheriff's Department, alleged in this complaint, and was an excessive use of force in causing his death, contrary to the 4th and 14th Amendments to the United States Constitution in that (a) Plaintiff had not violated any traffic laws; (b) Defendant MICHAEL TRUAX was not in fear of his death or great bodily injury at the time and place where he shot and killed the Plaintiff; and (c) that said conduct of Defendant MICHAEL TRUAX was malicious and/or reckless, causing the death of TERRY WILLIAMS, justifying an award of punitive damages." Id. at ¶31.

10

- That the death was "proximately caused by the excessive use of force." Id. at ¶32.

- That the defendant didn't shoot Terry Williams based on a "reasonable fear of death or great bodily injury." Id. at ¶33.

The amended complaint replaced the original complaint and is the operative complaint; the court considers only the amended complaint when determining whether the plaintiff has stated a claim against the defendant. The amended complaint does not assert claims on behalf of Cuc Huynh.

The procedural history is relevant. Seven months after filing the amended complaint, Attorney Walter Stern filed a motion to withdraw, asserting that the parties "have had a difference of opinion with respect to the case and the plaintiffs have decided to pursue alternate representation." Dkt. No. 29 at 1. Attorney Stern filed a separate affidavit explaining that he and Special Administrator Cuc Huynh no longer were able to work together because of a fundamental disagreement on how to proceed. Id. at 3.

The court conducted a hearing on the motion to withdraw. Dkt. No. 32. Attorney Stern did not appear, but the plaintiff appeared on her own behalf. Id. at 1. The court expressed concern that Attorney Stern was representing a minor and an estate. Id. The court explained that if it allowed Stern to withdraw, there would be no attorney to represent the estate or the minor. Id. The court explained that the plaintiff, who is not an attorney, could not represent the estate and the minor. Id. In response to the court's concerns and questions, the plaintiff answered appropriately, in English, and without

11

hesitation. Dkt. No. 31 at 2:32-2:45; 3:08-3:11; 3:30-3:32; 3:45-3:57-4:29; 5:15-5:18, 7:59-8:03; 8:16-8:18; 9:04-9:06, 9:22-9:23. She said she had contacted lawyers and that they had told her they could not prove the case. Id. at 2:32-2:45. The plaintiff also indicated that she had another court date in Milwaukee County and was trying to retain counsel for that case. Id. at 3:57-4:29. The court explained to the plaintiff that the Milwaukee County litigation was separate from this civil rights litigation in federal court and gave the plaintiff a deadline of July 21, 2020 by which to retain an attorney (or the case would be dismissed without prejudice for lack of prosecution). Id. at 9:38-9:57. At no time during the hearing did the plaintiff indicate that she did not speak English or give the court the impression that she did not speak English—she did not speak with an accent or hesitate in any of her responses—and her answers were responsive to the court's questions.

No one entered an appearance for the plaintiff by July 21, 2010. The next day, the court dismissed without prejudice the minor and the estate as plaintiffs and ordered the plaintiff to notify the court whether she would be proceeding with her case. Dkt. No. 33.

On August 4, 2020, the plaintiff filed a letter saying that she wanted to continue with the litigation. Dkt. No. 34. The court conducted another status conference and the plaintiff again appeared without counsel. Dkt. Nos. 36, 37. The plaintiff interrupted the court and said that she had a new attorney, Paul Strouse, and that she had hired him the week before but that he was not available to attend the conference. Dkt. No. 36 at 4:53-10:24. Again, she

answered each of the court's questions without any apparent difficulty. The court gave Attorney Strouse a deadline of August 28, 2022 to enter a notice of appearance. Dkt. No. 37. Strouse entered the notice of appearance on August 27, 2020. Dkt. No. 38.

The plaintiff filed a stipulation to withdraw as counsel on May 4, 2021—shortly before the discovery deadline. Dkt. No. 44. The court scheduled a status conference for May 4, 2021, dkt. no. 45, but the court received a call from Strouse's office on the morning of the hearing to say that Attorney Strouse had a conflict; the plaintiff filed a motion to adjourn the hearing, dkt. no. 46. The court granted the motion, dkt. nos. 47, 48, and rescheduled the status conference for May 18, 2021, with the instruction that the plaintiff be on the phone, May 4, 2021 Notice of Hearing. The plaintiff appeared with Attorney Strouse. Dkt. Nos. 49, 50. Attorney Strouse explained that he had received "voluminous" discovery in January and that he would not have the time to properly represent the plaintiff in the case. Dkt. No. 49 at 7:37-9:16. Attorney Strouse said that he *would* be able to represent the plaintiff if the court set new deadlines. Id. at 10:51-10:54. The court suspended the deadlines to allow Attorney Strouse to assist the plaintiff in locating new counsel or determine whether he would continue to represent the plaintiff. Dkt. No. 50.

The court conducted yet another status conference on July 29, 2021. Dkt. Nos. 51, 52. Attorney Strouse appeared and said that after he had unsuccessfully tried to recruit successor counsel for the plaintiff, he had organized the case file and conducted research and that he would remain on

13

the case. Dkt. No. 52. The court granted Attorney Strouse's oral motion to withdraw the stipulation to withdraw from representing the plaintiff. Id. While Attorney Strouse represented the plaintiff, the defendant filed a motion to dismiss for failure to prosecute, dkt. no. 56, and a motion for summary judgment, dkt. no. 64. Meanwhile, on January 28, 2022, Attorney Strouse filed a motion to withdraw, dkt. no. 61; the defendant responded, asking the court to deny the motion, dkt. no. 62, and Attorney Strouse filed a second motion to withdraw on March 4, 2022, dkt. no. 63.

When it received no brief in opposition to summary judgment, the court set a status conference on June 22, 2022. Dkt. No. 67. Attorney Strouse didn't appear, but the plaintiff appeared through a "representative/caregiver," Richard Thomas. Dkt. Nos. 69, 61. This court assumed the representative to be appearing because of a language barrier.[2] Dkt. No. 69 at 1:19-1:24. The court asked Thomas what the plaintiff intended to do with the litigation; Thomas "asked" the plaintiff but the court did not hear any translation. Id. at 12:01-14:26. Thomas said the plaintiff was having a difficult time finding an attorney and that he had advised her to find one (because he was not an attorney). The court explained to Thomas and the plaintiff that Thomas could not represent the plaintiff because he was not an attorney. Id. at 14:27-15:46. The court explained that the case already had languished for four years and stated that it could not, in good conscience, allow the case to sit for months at a time. Id. at

---

[2] The court made this assumption even though the plaintiff had had no difficulty communicating with the court in prior hearings.

15:46-16:25. The court gave the plaintiff thirty days to either find an attorney or respond to the motion for summary judgment. Id. at 16:26-17:04.

On July 14, 2022, the plaintiff asked for another extension to respond to the summary judgment motion; she did not indicate why she needed additional time or how much time she needed. Dkt. No. 72. The court denied the extension, but based on the length of time the motion had been pending, the court gave the plaintiff an additional two weeks to respond to the motion. Dkt. No. 74.

Against that backdrop, the court returns to the operative complaint—the amended complaint. The defendant argues that the amended complaint does not state any claim for relief from the *plaintiff*. The court agrees. The cause of action describes alleged violations of *Terry Williams's* rights. It alleges pecuniary loss to his estate. And it alleges that Williams's minor daughter lost his companionship and society. There is no description of any loss or injury to the *plaintiff*. The plaintiff is listed in the caption as a plaintiff. Dkt. No. 20 at 1. She is described as his biological mother. Id. at ¶5. But there is no reference to the plaintiff anywhere in the body of the complaint or the cause of action. The amended complaint does not allege that the defendant caused any injury to the plaintiff.

The defendant also argues that even though she is his mother, the plaintiff cannot pursue Terry Williams's Fourth Amendment claim. The defendant is correct. In Russ v. Watts, 414 F.3d 783 (7th Cir. 2005), the Seventh Circuit held that the parents of an adult son who was fatally shot by

an officer had no constitutional right to recover for loss of society and companionship under 42 U.S.C. §1983 (the statute that allows a citizen to sue someone who violates his or her constitutional rights while acting under color of state law). The Seventh Circuit determined that a prior case, Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984), had been wrongly decided. Id., 414 F.3d at 788. The court explained:

> Since *Bell*, several of our sister circuits have considered whether the Constitution protects a parent's relationship with his adult children in the context of state action which has the incidental effect of severing that relationship. No other court of which we are aware has allowed a parent to recover for the loss of his relationship with his child in these circumstances. Most courts that have considered the issue have expressly declined to find a violation of the familial liberty interest where the state action at issue was not aimed specifically at interfering with the relationship. *See Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186, 1190 (10th Cir. 1985) (plaintiffs' § 1983 action for the wrongful death of their son and brother while he was in state custody was properly dismissed because plaintiffs did not allege that defendants intended to deprive them of their protected relationship with the decedent*); Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 9 (1st Cir. 1986) (declining to find violation of substantive due process right based on government action causing only an "incidental deprivation" of the relationship between appellants and their adult relative when he was allegedly beaten to death by guards while in prison); *McCurdy v. Dodd,* 352 F.3d 820, 830 (3d Cir. 2003) (where officer shot and killed individual after he refused demands to hold up his hands, father could not recover for deprivation of his relationship with his son because the official action was not "directed at the parent-child relationship"); *see also Claybrook v. Birchwell,* 199 F.3d 350, 357–58 (6th Cir. 2000) (adult children whose father was shot by police officers could bring action under § 1983 only as administrators of father's estate, not for any collateral injuries suffered by themselves personally); *Shaw v. Stroud*, 13 F.3d 791, 804–05 (4th Cir. 1994) (declining to recognize wife and minor child's Fourteenth Amendment claim for loss of love and support of their husband and father after he was shot by police officer). *But see Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985) (parents had a constitutionally protected liberty interest in the companionship and society of their 14-year-old son and stated

16

claim under § 1983 against school officials after their son committed suicide while at school).

Id. at 787, 788. In holding that the parents had no right to recover, the Seventh Circuit focused on the fact that the state had not intentionally acted to interfere with the family relationship. Id. at 790. The court explained that allowing recovery under these circumstances "would create the risk of constitutionalizing all torts against individuals who happened to have families." Id.

A year after Russ, the Seventh Circuit declined to reinstate a wife's §1983 claim based on her familial relationship with the deceased, noting that she had not alleged that the deceased was killed "for the specific purpose of terminating [his] relationship with his family." Thompson v. City of Chi., 723 F.3d 444, 452 n.25 (7th Cir. 2006) (quoting Russ, 414 F.3d at 790). More recently, District Court Judge Brett Ludwig held that derivative claims—claims based on violations of other person's rights—fail as a matter of law because constitutional claims under §1983 are personal. Estate of Swayzer v. Milwaukee Cty., No. 16-cv-1703-bhl, 2022 WL 656884, *9 (E.D. Mar. 4, 2022). The Second, Third and Eighth Circuits have refused to allow a Fourteenth Amendment Due Process claim under §1983 unless there is an allegation that the state action was intentionally directed at that the familial relationship. Partridge v. City of Benton, Ark., 929 F.3d 562, 568-69 (8th Cir. 2019); Gorman v. Rensselaer Cty., 910 F.3d 40, 47-48 (2d Cir. 2018); McCurdy v. Dodd, 352 F.3d 820, 830 (3d Cir. 2003).

17

There is no allegation in the amended complaint that the defendant intentionally acted to interfere with the family relationship. The plaintiff does not address this; she relies on <u>Bell</u>—the case that <u>Russ</u> determined had been wrongly decided. <u>Russ</u>—not <u>Bell</u>—is the law of this circuit. While the plaintiff acknowledges that <u>Bell</u> has been reversed, she argues that <u>Bell</u> recognized that "an emotional bond can exist between an adult child who resides at home and a surviving parent." Dkt. No. 75 at 10. <u>Russ</u> does not carve out an exception for the mother of an adult son who lives at home, contributes to expenses and buys clothes for family members.

The plaintiff suggests that the amended complaint's phrasing of the relief requested somehow states a claim. That language does nothing more than request judgment in favor of all the plaintiffs for "compensatory damages, pain and suffering, loss of life, loss of companionship and society, and pecuniary losses to the estate." Dkt. No. 75 at 10. The plaintiff is not entitled to damages for any of those things in federal court, because the amended complaint does not allege that *she* has endured pain and suffering, or that she has lost companionship and society. Even if she had, her allegations sound in state torts like negligence and wrongful death. If the amended complaint had alleged state law tort claims on behalf of the plaintiff, this court would not have had jurisdiction to hear them; a federal court may hear state-law claims only if they are supplemental to a valid federal question claim under 28 U.S.C. §1331 (which the plaintiff has not asserted) or if the plaintiff and the defendant are

18

citizens of difference states as required by 28 U.S.C. §1332 (which is not the case here).

The plaintiff has not asked to file a second amended complaint. If she had, the court would not have granted that request. Although Fed. R. Civ. P. 15(a)(3) encourages courts to "freely give leave" to amend "when justice so requires," factors like "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment" may provide a reason to deny such leave.

Here, two of those factors are present. First, the court may deny leave to amend when "it is clear that the defect cannot be corrected so that amendment is futile . . . ." Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. and Nw. Ind., 786 F.3d 510, 520 (7th Cir. 2015). Even if the plaintiff were to file a second amended complaint alleging that she, herself, had suffered loss of society, loss of companionship and/or pecuniary loss as a result of her son's death, Russ would bar her claims. Amendment would be futile.

Second, a court may deny leave to amend based on undue delay and undue prejudice to the opposing party. Through no fault of the defendant, this case has been pending four years. She has had two attorneys represent her in the litigation; while one of those attorneys withdrew because of his inability to handle the case (Strouse), the other appears to have withdrawn due to a disagreement with the plaintiff (Stern). Even so, the court gave the plaintiff

extensions of time to retain counsel. She either did not or could not do so. The court cannot indefinitely delay the proceedings in the hope that the plaintiff might be able to find a lawyer with whom she can agree. Despite not having a lawyer (and despite the fact that after speaking with the court herself at two hearings, a "representative" spoke at the most recent one), the plaintiff filed a brief in opposition to summary judgment that complied with Rule 56, cited authority from this circuit, properly noted the burden for an excessive force claim and cited to the pleadings.

The amended complaint does not allege any injury to the plaintiff. Nor does it allege a constitutional violation under §1983 that she can bring—on her own behalf—for the alleged constitutional violations experienced by her adult son. Nor can she bring any such claim on behalf of the estate or her son's minor daughter because she is not a lawyer.

The plaintiff has suffered a terrible loss. She may have claims under state law. Her son's estate might have claims under federal law if there were an attorney to represent the estate. But the *plaintiff*—the only plaintiff left in the case—has no claims that she can pursue in federal court.

## V.   Conclusion

The court **GRANTS** defendant's motion for summary judgment. Dkt. No. 64.

The court **ORDERS** that the case is dismissed **WITH PREJUDICE**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. <u>See</u> Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. <u>See</u> Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 17th day of October, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**